(122 So. 824)

HOGLAN et al. v. MOORE et al.   (6 Div. 195.)

Supreme Court of Alabama.   June 6, 1929.

T. J. Lamar and W. A. Weaver, both of Birmingham, for appellants.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellees.

THOMAS, J. The appeal presents for review the action of the court in sustaining demurrers and dismissing the bill for want of equity, and declining motion for rehearing.

The bill is filed by C. D. Hoglan and J. A. Keith against named officers and directors of the American Cast Iron Pipe Company, and other individuals who are not officers or directors of said corporation. The American Cast Iron Pipe Company is a corporation under the laws of Georgia, and it was operating a cast-iron pipe plant in this state at Birmingham. Under the averments of the bill as originally filed the complainants were not stockholders nor employés of said corporation at the time the bill was filed; it being averred that petitioners "were employés of said company and were at and for a long time before the said John J. Eagan departed this life." The bill as amended, after demurrer taking the objection for the lack of interest in the subject-matter, to maintain stockholder's bill, alleges that complainant C. D. Hoglan was one of the employés of the company at the time the bill was filed, and that each of the complainants is a beneficiary under said will.

The bill sought a construction of the will of Mr. Eagan, a resident citizen of the state of Georgia at the time of his death, and whose said will was probated in that jurisdiction. It may be said in passing that the provisions of the will are not averred in the original bill to be of doubtful or uncertain meaning as to properties or holdings of the majority of the common stock in the corporation domiciled in Georgia and operating in this jurisdiction. On the contrary, the prayer of the bill sets forth how the will should be construed and prays for that averred construction to be made and entered by the court. The averments of paragraph XII of the bill are to the effect that the will and codicil are in "plain and simple language," etc. And the redress that is sought is for alleged acts of mismanagement on the part of officers and members, and for other relief not here pertinent; alleged that in 1923 said Eagan was holder and owner of the majority of common stock of said corporation, and with concurrence of the board of directors established a system of management by the company and said employés. It was as follows:

"A system of management by the company and said employés wherein a Board of Management was created, the members of which held office for one year, and consisted of four members, who held the office by appointment by the then board of directors of said company, and said board had certain duties to perform in and about the company's affairs, would in said management confer with the board of operatives, which was composed of ten men elected annually by the employés known or commonly called the working men, who were selected from their own ranks on the approximate basis of one representative to every 150 employés, said board of management was to so conduct itself that as to give advice upon request to employés of such accurate information about the company's affairs to the end that perfect co-operation might be had between employés and the managers, and which said members of said boards were the board of trustees."

This operating arrangement had for its purpose the harmonious or unified co-operation of employés and the managers in the conduct of said business in which the respective parties were then engaged. It is shown by complainants' pleading that by the last will and codicil of Mr. Eagan, all of the common stock of the corporation (1,085 shares) owned by testator was bequeathed to the "members of the board of management" and to the "members of the board of operation," and jointly to them and their successors in office of the members of said board, in trust for the specific and stated purpose, and subject to certain directions and charged with a certain use. The bequest in trust is as follows:

"I hereby give, bequeath and devise ten hundred and eighty-five (1085) shares of the Common Stock of the American Cast Iron Pipe Company, being all of my holdings of said Common Stock of said Company, to the members of the Board of Management and the members of the Board of Operatives of said American Cast Iron Pipe Company, jointly, and their successors in office in said Boards, as Trustees, in trust for the following purposes, and subject to the directions hereinafter set forth, to wit:

"First: To receive all dividends paid upon said stock and use so much of the dividends thus received, as said *trustees in their discretion may deem advisable* in supplementing the salaries and wages of the employees of said American Cast Iron Pipe Company in amounts sufficient *in the judgment of the said trustees* to insure to each of said employees an *income equivalent to a living wage*, said *trustees to be the sole judge* of what constitutes a living wage, *and of the*

*amounts,* if any, to be paid to each one or any of said employees of said company.

"Second: To use such sums from the dividends received upon said stock *as said trustees in their discretion may deem advisable,* in paying *an income to any employee, or to the wife and minor children of any employee* of said American Cast Iron Pipe Company, *at such times* as the plant of said company *may shut down* for any cause, or at such times as said employee, through no fault of his or her own, but through accident, sickness, or other unavoidable causes, *shall be unable to work,* and said *trustees are hereby made the sole judges of the amounts if any,* which shall be paid by said trustees to any employee, or to the members of any employees' family under the provisions of this paragraph. ·

"Third. *To vote said certificates of stock in said American Cast Iron Pipe Company at all meetings of stockholders of said company.*

" * * * I direct, that in determining all questions as to voting said stock, and as to carrying out the provisions of the trust created by this Codicil, the members of the Board of Management, as Trustees, shall vote as a unit, and the Members of the Board of Operatives, as trustees, shall vote as a unit, the vote of each group to determine by the majority vote of the members of the respective boards; and that in the event of the failure of the respective groups of trustees to agree upon any question said question in dispute shall be referred to the Board of Trustees, whose decision on said question in dispute shall be final. Any member of either of said boards, who shall cease to be a member of either board for any cause whatsoever shall thereupon cease to be a trustee under this Codicil of my will, his or her successor upon either of said Boards becoming, by virtue of his or her office, a trustee under this Codicil, immediately upon his or her acceptance of said trust. Any employee of said American Cast Iron Pipe Company who shall die or who shall, voluntarily, (we interpolate, 'or involuntarily', as shown by brief of counsel) for any cause whatsoever, other than for temporary shutting down of the plant or plants of said Company, leave the employment of said Company, shall immediately thereupon cease to have any interest of any kind whatsoever in any income from or in any part of the trust estate created by this codicil of my will, any person, who may hereafter at any time enter the employment of said company, shall immediately become a beneficiary of said trust estate with all of the rights and privileges enjoyed by the employees of said company at the time of my death, and subject to the same conditions." (Italics supplied.)

The all-sufficient purposes of testator (Ralls v. Johnson, 200 Ala. 178, 75 So. 926), are thus stated by him:

" * * * It is my purpose, will and desire to create a trust estate both for the benefit of the persons actually in the employ of said American Cast Iron Pipe Company and *for such persons as may require the product of said company.* The trustees, appointed by this codicil, in accepting the trust and acting hereunder, will be trustees, both for said employees and said persons requiring the product of said Company. It is my will and desire that said trustees in the control of said Company, through the control of said Common· Stock, shall be guided by the sole purpose of so managing said Company as to enable said American Cast Iron Pipe Company *to deliver the Company's product to persons, requiring it, at actual cost,* which shall be considered the lowest possible price *consistent with the maintenance* and extension of the Company's plant, or plants, and business and the *payment of reasonable salaries and wages to all the employees* of said company, my object being to insure service both to the purchasing public and to ·labor in the basis on the Golden Rule given by our Lord and Saviour Jesus Christ." (Italics supplied.)

The demurrer, among other things, assailed the bill: (1) As being without equity; (2) because complainants are shown to have no interest in the subject-matter; (3) because no breach of the trust established and created by the will is shown by the averments of facts; and (4) none of the alleged acts on the part of the directors or officers were prejudicial of the rights of or available to complainants.

The reason upon which the court rested its decree sustaining demurrer to the bill as amended and dismissing the same for want of equity is:

" * * * Pretermitting all other objections raised by the demurrer, the court is of opinion that the bill is without equity and that it cannot be amended so as to give it equity. The supposed rights of complainants arise out of and are rested upon the trusts created and set up in the codicil to the will of John J. Eagan. These trusts are annexed to the gift of certain shares of the common stock of the American Cast Iron Pipe Company to the members of the board of management and ·the members of the board of operatives of said company, jointly, as trustees, and are three in number, viz.:

"First: To receive all dividends paid upon said stock and use so much of the dividends thus received, as said trustees in their discretion may deem advisable, in supplementing the salaries and wages of the employees of said American Cast Iron Pipe Company in amounts sufficient in the judgment of the said trustees to insure to each of said employees an income equivalent to a living wage, said trustees to be the *sole judges* of what constitutes a living wage, and of the amounts, if any, to be paid to each one or any of said employees of said company.

· "Second: To use such sums from the divi-

dends received upon said stock as said trustees in their discretion may deem advisable, in paying an income to any employé, or to the wife and minor children of any employee of said American Cast Iron Pipe Company, at such times as the plant of said Company may shut down for any cause, or at such times as said employee through no fault of his or her own, but through accident, sickness, or other unavoidable causes, shall be unable to work, and said trustees are hereby made the *sole judges.* of the amounts, if any, which shall be paid by said trustees to any employee, or to the members of any employees family under the provisions of this paragraph.

"Third: To vote said certificates of stock in said American Cast Iron Pipe Company at all meetings of stockholders of said company.

"It does not appear from the averments of the bill that there has been a breach of any of these trusts. The court is of the opinion that it was *not* the intention of John J. Eagan to wrest from the board of directors of the American Cast Iron Pipe Company the management and control of the corporation, even if it had been competent for him to do so. It does not appear that any of the other alleged wrongs on the part of the directors or the trustees were evasive of or prejudicial to the rights of complainants."

█ It is established in this jurisdiction that a court of equity will refuse a suit for construction of a will (within the law) that is free from ambiguity and perfectly plain in its requirements and dispositions. Clay Adm'r v. Gurley Adm'r, 62 Ala. 14, 19. The rule of this jurisdiction is stated by the Chief Justice in Birmingham Trust & Savings Co. v. Cannon, 204 Ala. 336, 342, 85 So. 768, 773; Id., 204 Ala. 536, 85 So. 768, as follows:

" * * * A court of equity has jurisdiction for the enforcement of all trusts, and can generally be called upon by an interested party to construe or interpret the instruments creating or regulating the same; but in order to obtain an interpretation the instrument should be ambiguous or susceptible of a double meaning or construction, and where there is no bona fide doubt as to the true meaning and intent of the provisions of the instrument creating the trust, or as to the particular course that the trustee should pursue, there is no need for equitable interference. 3 Pomeroy, Eq. Jur. § 1064; Clay v. Gurley, 62 Ala. 14."

See, also, analogous decisions in this (Hinson v. Naugher, 207 Ala. 592, 93 So. 560; Self v. Self, 212 Ala. 512, 103 So. 591), and in other jurisdictions (3 Pom. Eq. Jur. § 1064; Baxter v. Baxter, 43 N. J. Eq. 82, 10 A. 814; Heald v. Heald, 56 Md. 300; Woods v. Fuller, 61 Md. 457).

The decision of the trial court may have been rested on this ground on the averments of the bill that the terms of the will and codicil are in "plain and simple language." However, the amendment contains an averment that the will or its provisions "are of doubtful construction," and that complainants are beneficiaries thereunder. Gunter v. Townsend, 202 Ala. 160, 164, 79 So. 644.

█ If the doubtful or conflicting averments of the bill, and that as amended, as to the necessity for construction, be taken to mean that its terms were ambiguous and may be duly presented to a court of equity for construction, such action is only permitted by one having the required right and interest in the subject-matter (Gunter v. Townsend. 202 Ala. 160, 79 So. 644; Hinson v. Naugher, 207 Ala. 592, 93 So. 560; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Self v. Self, 212 Ala. 512, 103 So. 591, and application be duly made to a court having jurisdiction of the subject-matter and the parties and within the venue of such action. The right and interest of C. D. Hoglan and J. A. Keith as such complainants are dependent upon the averred construction of the provisions of the will and codicil; and construction must be left to the courts of the state of Georgia, the situs or venue of the testamentary instrument and that of the succession of the stock of the corporation, made the subject of the instant bequest and trust. 1 Storey Eq. Jur. § 589; 22 Erie P. & P. 1196; 22 R. C. L. 68; 14 C. J. 511, § 763; 32 Cyc. 675; 40 Cyc. 1382. That is to say, the validity, extent, and nature of the trust created by the testator's last will depends upon the laws of the state of the domicile of such testator at the time of his death, as affecting the bequest and succession of such personal property. Wood v. Wood, 5 Paige (N. Y.) 596, 28 Am. Dec. 451; Welch v. Adams, 152 Mass. 75, 78, 25 N. E. 34, 9 L. R. A. 244; Osburn v. McCartney, 121 Ill. 408, 411, 12 N. E. 72; Knox, Ex'r, v. Jones, 47 N. Y. 389; Ford y. Ford, 70 Wis. 19, 45, 33 N. W. 188, 5 Am. St. Rep. 117; Clark's Appeal, 70 Conn. 195, 217, 39 A. 155; Radford v. Fidelity & Columbia Trust Co., 185 Ky. 453, 215 S. W. 285; In re Green (Sur.) 167 N. Y. S. 1084; In re Campbell, 53 Utah, 487, 173 P. 688; Smith v. Smith, 122 Va. 341, 94 S. E. 777; Lozier v. Lozier, 99 Ohio St. 254, 124 N. E. 167. Application should be made, in the first instance, to the Georgia court.

█ The grounds of demurrer assigned raised these questions, and the decree of the court might have been rested on the foregoing grounds. The declarations of this court are, that a corporation dwells in the state of its creation, though it may do business where its charter permits and is not denied by local law; that state courts cannot interfere in a foreign corporation's management of its internal affairs. In assuming the relation of stockholder, one subjects himself to the corporate laws of the state in which corporations are created, and the situs of its stock for the purpose of transfer, dividends, liens, etc., is in the state where the corporation is required to keep its registry of transfer and transact its said corporate business. Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18

A. L. R. 1376; Importing & Exporting Co of Georgia v. Locke, 50 Ala. 332.

The courts. of one state have no visitorial power over the corporations of another state in matters of vital concern to internal policy and management; and the issuance of stock, its transfer or succession, in the instant case, is that affecting a Georgia corporation with its business situs there; the succession dependent upon the construction of the Georgia Courts where the testator lived and his will duly probated. Georgia is the proper forum for litigation as to such matter. There is analogy to be found in Kansas & E. R. Const. Co. v. Topeka, S. & W. R. Co., 135 Mass. 34, 46 Am. Rep. 439; In re Fryeburg Water Co., 79 N. H. 123, 106 A. 225, 18 A. L. R. 1373; Kimball v. St. L. & S. F. R. Co., 157 Mass. 7, 31 N. E. 697, 34 Am. St. Rep. 250; Gregory v. New York, L. E. & W. R. Co., 40 N. J. Eq. 44, and notes; 18 A. L. R. 1396.

The effect of our decisions would deny this suit affecting personal property, the succession to which was dependent on the construction of a Georgia will and as affecting a corporation in that state. Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376; Goodwyn v. Cassels, 207 Ala. 482, 93 So. 405; Ensley v. Hodgson, 212 Ala. 526, 103 So. 465. In the Goodwyn v. Cassels Case construction of Young's will was as to the real property devised in Alabama; and in Ensley v. Hodgson, supra, the construction of the Tennessee will was limited to the real property in Alabama; and the construction of that will as to testator's intent and as affecting personal property by the Tennessee court, the place of domicile of the testator, was in no wise touched by this court. Ensley v. Ensley, 105 Tenn. 107, 58 S. W. 288. See, also, Peake v. Yeldell, 17 Ala. 636; Turner v. Fenner, 19 Ala. 355, 362; Evans v. Kittrell, 33 Ala. 449; Nelson v. Goree, 34 Ala. 565, 579; Castleman v. Jeffries, 60 Ala. 380, 388. In McGhee v. Alexander, 104 Ala. 116, 120, 16 So. 148, the decision was rested on Storey's Conflict of Laws, § 481, and Chief Justice Brickell concluded the subject with the observation that succession to personal property is governed exclusively by the law of the actual domicile of the deceased, at the time of his death; that law declares and appoints who are his next of kin. The intestate at the time of his death had her domicile in the state of Georgia. The law of that state "declares the succession to testatrix's personal estate."

We have indicated that shares of stock in a corporation are personal property of an intangible and incorporeal nature, whatever may be the character of the corporate property (Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 22 L. Ed. 189; In re Jones, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476; Tregear v. Etiwanda W. Co., 76 Cal. 537, 18 P. 658, 9 Am. St. Rep. 245; Greenleaf v. Board of Review, 184 Ill. 226, 56 N. E. 295, 75 Am. St. Rep. 168; 7 R. C. L. 196–7; 22 R. C. L. 67), and subject to the jurisdiction—in this case to the decision of the court of Georgia having the power to act in the premises.

The bill was properly dismissed because complainants are not shown to be stockholders. The amendment to that effect will be taken with Exhibit B (as amended or admitted at the hearing to read) "voluntarily or involuntarily for any cause whatever, other than temporary shutting down of the plant * * * shall immediately thereupon cease to have an interest of any kind whatever in any income from or in any part of the trust estate created by this codicil"; and with the averments in paragraph 11 as follows: "* * * That by the acceptance of the employment, under the provisions of said will and codicil, the said employés became the beneficial owners of the 1,085 shares of common stock, which carried with it an employment for life, security and protection in old age, unless paid employee should voluntarily (or involuntarily) leave the employment of said American Cast Iron Pipe Company, or should be discharged for legal causes, yet notwithstanding said contract of employment, and notwithstanding said employees had vested beneficial interest in said common stock, such to be divested only as above and herein stated, yet nevertheless, the said trustees have suffered many of said employés to be discharged without legal cause and said employés, or many of them, do not and cannot feel secure in their said employment (of whom complainant C. D. Hoglan is one)."

The theory of the original bill, that benefits were to cease only in the event of death or voluntary retirement from the service, is, no doubt, based on the omission of the word "involuntarily," which was added by amendment on or at the hearing of demurrer, and is so asserted and considered in the argument.

As one having merely a contingent interest in the common stock, complainants—if they remained in the service and if benefits were apportioned to that class—were given no direct interest, either in the stock or dividends that may be earned and declared. These questions were left to the judgment and discretion of the trustees appointed to administer a beneficent trust. Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. In any event, complainants show no such interest in the stock which entitles them to say they have been wronged or injured by the exercise of the judgment of said trustees. And any contingent and remote interest is a mere speculation on which they may not allege mismanagement, or contemplation thereof, as they have sought to do, in the courts of Alabama, under the charitable trust created by testator and his Georgia will. Crawford v. Carlisle, supra; 11 C. J. 370; Pennington v. Pennington, 70 Md. 418, 17 A. 329, 3 L. R. A. 816; In re Stumpenhousen's Estate, 108 Iowa, 555, 79 N. W. 376. Its validity as affected by the rule against perpetuities will be determined

in that jurisdiction. It is settled in this jurisdiction that if trustees exercise discretionary power in good faith, without fraud or collusion, in a case within this jurisdiction, our courts will not review or control their discretion, nor will a bill be entertained to compel execution of a mere discretionary power, etc. Perry on Trials, § 511. However, this may be, as to Mr. Eagan's will, we have shown that the courts of this state have no visitorial powers over the actions of foreign corporations that are required to be done, exercised, and declared in another state or foreign country where its corporate functions and decisions and declarations of policy must be made. Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376. Such is the penalty of stockholders assuming that relation to the foreign entity and sovereignty. He subjects himself to corporate laws as regulate acts under the laws of that other state or country in which the corporation is created and has its continued existence. Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376; 40 Cyc. 1844.

The right to maintain this suit cannot be rested on the fact that complainants are trustees by virtue of being members of the board of operatives. The will did not effect a change in the by-laws or charter of the corporation so to displace its directorate and to substitute therefor the trustees to whom the stock was given in trust with the enlarged and discretionary powers. It is for the Georgia courts to determine and declare its effect under the statutes of Georgia that are not exhibited. It is insisted in argument that by the Georgia Code, § 2222, corporations of a business nature are controlled and managed by its board of directors. The trustees under the will have no other or different powers than those given by that instrument and the statutes of Georgia having application. And the complainants, as employés or members of the board of operatives, have no standing in this court for the purpose of construction of the will, or to call to account the directors and officers of the corporation under the pleading before us.

This is not the holding that after the will and codicil are duly construed in Georgia, thereby declaring the meaning of that last will and testament, and who are its beneficiaries, the trust properties in this state may not be duly protected by the courts of this state and an abuse of the trust prevented.

We find no error in the decree of the trial court sustaining demurrers to the bill as amended on grounds stated in the decree.

Affirmed.

ANDERSON, C. J., and SAYRE, GARDNER, and BOULDIN, JJ., concur.
BROWN and FOSTER, JJ., not sitting.